E-filing

1    BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
     Alan R. Plutzik (Bar No. 077785)
2    2125 Oak Grove Road, Suite 120
     Walnut Creek, California 94598
3    Telephone: (925) 945-0200
     Facsimile: (925) 945-8792
4    aplutzik@bramsonplutzik.com

5    HARWOOD FEFFER, LLP
     Robert I. Harwood
6    James G. Flynn
     488 Madison Avenue, 8th Floor
7    New York, New York 10022
     Telephone: (212) 935-7400
8    Facsimile: (212) 753-3630

9    Attorneys for Plaintiff



FILED
OCT 29 2009
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

10                UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12   NANCY MELLO, Derivatively on behalf of        Case No.   C09-05137
     Nominal Defendant Immersion Corporation,,
13
                                  Plaintiff,        SHAREHOLDER DERIVATIVE
14                                                  COMPLAINT FOR BREACHES OF
          v.                                        FIDUCIARY DUTIES, ABUSE OF
15                                                  CONTROL, GROSS
     CLENT RICHARDSON, STEPHEN M.                   MISMANAGEMENT AND COMMON
16   AMBLER, VICTOR A. VIEGAS, JACK                 LAW RESTITUTION / UNJUST
     SALTICH, JOHN HODGMAN, ANNE                    ENRICHMENT AND VIOLATION
17   McGHEEST, VAN NAARDEN, and EMILY               OF FEDERAL SECURITIES LAWS
     LIGGETT,
18
                                  Defendants,
19
          -and-
20
     IMMERSION CORPORATION,
21
                         Nominal Defendant.
22

23

24

25

26

27                                                 ORIGINAL

28

1    Plaintiff Nancy Mello ("Plaintiff"), by and through his undersigned attorneys, hereby submits this Shareholder Derivative Complaint (the "Complaint") against the defendants named herein, for the benefit of nominal defendant Immersion Corporation ("Immersion" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment from May 3, 2007 to the present (the "Relevant Period").

2.    Plaintiff also bring this action on behalf of the Company against two of its former officer, defendants Clent Richardson ("Richardson") and Stephen M. Ambler ("Ambler") pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b 5 promulgated thereunder (17 C.F.R. § 240.10b 5)).

## NATURE AND SUMMARY OF THE ACTION

3.    Immersion develops, manufactures, licenses and supports a range of hardware and software technologies, and products that enhance digital devices with touch interaction.

4.    On February 28, 2008, Immersion shocked investors when it announced that the Company's previously filed condensed consolidated financial statements contained in Immersion's Forms 10-Q for the quarterly periods ended March 31, 2007, June 30, 2007, and September 30, 2007 should no longer be relied upon due to errors in the accounting of income taxes. Moreover, the Company disclosed that as a result of these errors, the provision for income taxes for the three, six, and nine month periods ended March 31, 2007, June 30, 2007, and September 30, 2007, respectively, was understated by $6.6 million, and that management concluded that the Condensed Consolidated Balance Sheets, Condensed Consolidated Statements of Operations, and Condensed Consolidated Statements of Cash Flows reported in Immersion's Quarterly Financial Statements, and related discussion of provision for income taxes in Management's Discussion and Analysis of Financial Condition and Results of Operations, should be restated in order to correct these errors.

5.    On this news, shares of Immersion declined $1.81 per share, or 17.68%, to close on February 29, 2008, at $8.43 per share, on unusually heavy volume.

6.    Nearly a year and a half later, on July 1, 2009, Immersion further shocked investors when it announced that the Audit Committee of the Board of Directors was conducting an internal

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS
59668

1

investigation into certain previous revenue transactions in its Medical line of business. The Company further disclosed that as a result of this investigation, Immersion's previously-reported financial information could be materially impacted.

      7.    On this news, shares of Immersion declined $1.14 per share, more than 23%, to close on July 1, 2009, at $3.80 per share, on unusually heavy volume. Worse news was yet to follow.

      8.    On July 31, 2009, defendant Ambler – the Company's Principal Financial Officer, Chief Financial Officer ("CFO"), and Vice President, Finance – abruptly resigned. As detailed herein, Ambler had signed and certified each annual and quarterly report during the Relevant Period. The Company did not announce this until August 5, 2009, when it issued a Current Report on Form 10-K disclosing his resignation.

      9.    On August 10, 2009, defendants caused the Company to issue a Current Report with the SEC on Form 8-K announcing that the financial statements in the Company's 2008 last annual report, and quarterly reports since March 31, 2008 – roughly contemporaneous with its February 28, 2008 shocking announcement – contained errors.

      10.    In the wake of this financial scandal, on October 21, 2009, the Company announced that its new President and CEO, defendant Richardson, suddenly and immediately resigned. Like Ambler and as detailed herein, Richardson had signed and certified each annual and quarterly report since May 2008. Indeed, Ambler and Richardson were the only officers to sign and certify the Company's financial reports since May 2008.

      11.    Throughout the Relevant Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose:

      1.    that the Company overstated its income tax expense;

      2.    that the Company improperly recognized revenue;

      3.    that, as a result, the Company's revenue, accounts receivable, and financial results were overstated during the Relevant Period;

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

2

4.    that the Company's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP");

5.    that the Company lacked adequate internal and financial controls; and

6.    as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

12.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Company has suffered significant losses and damages.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1337 and 1367 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

14.    This action arises under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b 5 promulgated thereunder (17 C.F.R. § 240.10b 5).

15.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. §1391(b) and (c). Immersion maintains its principal place of business in this District and substantial acts in furtherance of the alleged fraud and/or its effects occurred within this District.

16.    In connection with the acts and omissions alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## THE PARTIES

17.    Plaintiff is, and was at all times relevant hereto, an owner and holder of Immersion common stock.

18.    Nominal Defendant Immersion is a Delaware corporation with its principal executive offices located at 801 Fox Lane, San Jose, California 95131.

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

3

19. Defendant Richardson was, between April 2008 and October 21, 2009, President, CEO, and Director of Immersion. On October 21, 2009, the Company announced that Richardson had resigned "immediately" as CEO and as an Immersion director.

20. Defendant Ambler was, at all relevant times, Principal Financial Officer, Chief Financial Officer ("CFO") and Vice President, Finance, of Immersion until he resigned from his employment with the Company on July 31, 2009.

21. Defendant Victor A. Viegas ("Viegas") was Chief Executive Officer ("CEO") of Immersion from October 2002 through April 2008, and President of Immersion from February 2002 through April 2008. Defendant Viegas was also Chairman of the Board of Immersion from October 2007 to February 2009. On October 21, 2009, the Company announced that Viegas would act as interim CEO.

22. Defendant Jack Saltich ("Saltich") has served as a director of Immersion since January 2002 and Chairman of the Board since February 2009. Defendant Saltich also served as Chairman of the Compensation Committee and as a member of the Audit Committee at all relevant times.

23. Defendant John Hodgman ("Hodgman") has served as a director of Immersion since January 2002. Defendant Hodgman also served as Chairman of the Audit Committee at all relevant times.

24. Defendant Anne McGheest ("McGheest") has served as a director of Immersion since February 2007. Defendant McGheest also served as Chairman of the Nominating Committee at all relevant times.

25. Defendant Robert Van Naarden ("Van Naarden") has served as a director of Immersion since October 2002. Defendant Van Naarden also served as a member of the Compensation Committee at all relevant times.

26. Defendant Emily Liggett ("Liggett") has served as a director of Immersion since February 2006. Defendant Liggett also served as a member of the Nominating Committee at all relevant times.

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

4

27.     Defendants Viegas, Saltich, Hodgman, McGheest, Van Naarden, and Liggett may be referred to collectively herein as the "Director Defendants."

28.     Defendants Saltich, Hodgman, and Liggett may be referred to collectively herein as the "Audit Committee Defendants."

## DEFENDANTS' DUTIES

29.     By reason of their positions as officers, directors, and/or fiduciaries of Immersion and because of their ability to control the business and corporate affairs of Immersion, Defendants owed Immersion and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Immersion in a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of Immersion and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Immersion and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

30.     Defendants, because of their positions of control and authority as directors and/or officers of Immersion, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial, and directorial positions with Immersion, each of the Defendants had knowledge of material non public information regarding the Company.

31.     To discharge their duties, the officers and directors of Immersion were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Immersion were required to, among other things:

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS
MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL
SECURITIES LAWS - 59668

5

1.     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business like manner so as to make it possible to provide the highest quality performance of their business;

2.     Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

3.     Exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP; and

4.     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

32.     According to the Charter of the Audit Committee, the Audit Committee Defendants were and are responsible for, among other things:

1.     Discussing the Company's earnings press releases with management and the independent auditors;

2.     Reviewing quarterly and annual statements with management and the independent auditors prior to filing;

3.     Reviewing the results of management's efforts to monitor compliance with the Company's programs and policies designed to ensure adherence to applicable laws, rules and regulations;

4.     Discussing with the Company's General Counsel any legal matters brought to the Committee's attention that could reasonably be expected to have a material impact on the Company's financial statements; and

5.     Discussing with management the Company's significant financial risk exposures and the actions management has taken to limit, monitor or control such exposures.

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

6

# DEFENDANTS' FALSE AND MISLEADING STATEMENTS

## A.   First Quarter 2007 Financial Results

33.   On May 3, 2007, Defendants caused the Company to issue a press release entitled "Immersion Corporation Reports First Quarter 2007 Financial Results" which states, in pertinent part:

> Immersion Corporation (NASDAQ:IMMR), a leading developer and licensor of touch feedback technology, today announced its first quarter 2007 financial results. Revenues were $6.4 million for the quarter ended March 31, 2007 compared to revenues of $6.0 million for the first quarter of 2006.
>
> Operating income for the first quarter of 2007 was $131.0 million, which included $134.9 million of income arising from Litigation conclusions and patent license income as well as stock based compensation expense of $634,000. In the first quarter of 2006, the operating loss was $2.5 million, which included $650,000 of income arising from a litigation settlement and stock based compensation expense of $723,000.
>
> Net income for the first quarter was $122.4 million compared to a net loss of $2.9 million for the first quarter of 2006. Diluted earnings per share were $4.13 for the quarter compared to $0.12 loss per share for the first quarter of 2006.
>
> As of March 31, 2007, Immersion had cash and cash equivalents totaling $137.6 million compared to $32.0 million as of December 31, 2006.
>
> During the quarter, Immersion and Sony Computer Entertainment concluded their patent litigation at the U.S. Court of Appeals for the Federal Circuit and entered into a new business agreement. In total, Immersion will receive a minimum of $152.2 million through the conclusion of the litigation and the new business agreement. Immersion has recorded $119.9 million of this sum as Litigation conclusions and patent license income, and $107,000 of this sum as revenue during the quarter, and will record $29.9 million as revenue and $2.3 million as interest income in future periods. In addition, Immersion recorded $15.0 million as Litigation conclusions and patent license income upon release of its long term customer advance from Microsoft, which occurs as a result of Immersion's determination that the conclusion of its litigation with Sony does not trigger any payment obligation to Microsoft under its agreements.
>
> Immersion will be able to utilize the majority of its tax net operating loss carryforwards against the income recorded in the quarter. Provision for income tax expense for the quarter was $8.5 million, an effective tax rate of 6.5%.

34.   On May 10, 2007, Defendants caused Immersion to file its Quarterly Report on Form 10 Q with the SEC for the quarterly period ended March 31, 2007. The Company's May 3, 2007 Form 10 Q was signed by defendants Viegas and Ambler, and reaffirmed the Company's

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

7

financial results previously announced on May 3, 2007. The Company's May 3, 2007 Form 10 Q

also contained Sarbanes Oxley certifications from defendants Viegas and Ambler, who certified:

    1.    I have reviewed this quarterly report on Form 10 Q of Immersion Corporation;

    2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

    3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations, and cash flows of the registrant as of, and for, the periods presented in this report;

    4.    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a 15(e) and 15d 15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a 15(f) and 15d 15(f)) for the registrant and have:

    a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

    5.    The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

    a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize, and report financial information; and

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

8

b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

**B.     Second Quarter 2007 Financial Results**

35.     On August 2, 2007, Defendants caused the Company to issue a press release entitled "Immersion Corporation Reports Second Quarter 2007 Financial Results" which states, in pertinent part:

> Immersion Corporation (NASDAQ:IMMR), a leading developer and licensor of touch feedback technology, today announced its second quarter 2007 financial results. Revenues were $8.6 million for the quarter ended June 30, 2007 or 29% higher when compared to revenues of $6.7 million for the second quarter of 2006.
>
> Net income for the second quarter was $176,000 compared to a net loss of $2.4 million for the second quarter of 2006. Diluted earnings per share were $0.01 for the quarter compared to $(0.10) loss per share for the second quarter of 2006.
>
> Revenues were $15.0 million for the six months ended June 30, 2007 compared to revenues of $12.7 million for the first six months of 2006. Net income for the first six months of 2007 was $122.6 million, or $4.03 diluted earnings per share, compared to a net loss of $(5.3) million, or $(0.22) loss per share, for the first six months of 2006.
>
> "Second quarter revenue from our Medical, Gaming, and Touch Interface Products groups led our 29% revenue growth over the second quarter of last year," said Victor Viegas, Immersion CEO and president. "Our back to back profitable quarters this year reflect our continued efforts to achieve sustained profitability."
>
> As of June 30, 2007, Immersion had cash, cash equivalents, and short term investments totaling $135.5 million compared to $137.6 million as of March 31, 2007. In a press release on July 27, 2007, Immersion announced it notified the holders of its convertible Debentures that it will redeem the Debentures at the end of a thirty day notice period unless they elect to convert the outstanding principal and accrued interest into shares of Immersion's common stock within that period.
>
> "We now have the financial base to pursue significant revenue growth from our many opportunities in existing and new markets," continued Viegas. "As a result of our June agreement with Nokia, the number one maker of mobile devices, we now have licensed our VibeTonz(R) technology to three of the top five handset makers, thereby creating the potential for a significant increase in the number of VibeTonz enabled mobile devices and the type and amount of content available for them. In addition, during the quarter we launched an exciting new medical simulation platform, the LaparoscopyVR(TM) system, that can address training needs across multiple disciplines including general surgery, gynecology, pediatrics, and urology."

36.     On August 8, 2007, Defendants caused Immersion to file its Quarterly Report on Form 10 Q with the SEC for the quarterly period ended June 30, 2007. The Company's August 8, 2007 Form 10 Q was signed by defendants Viegas and Ambler, and reaffirmed the Company's

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

9

1  financial results previously announced on August 2, 2007.  The Company's August 8, 2007 Form

2  10 Q also contained Sarbanes Oxley certifications from defendants Viegas and Ambler in a form

3  substantially similar to the May 2007 Form 10-Q.

4  **C.    Third Quarter 2007 Financial Results**

5        37.    On November 1, 2007, Defendants caused the Company to issue a press release

6  entitled "Immersion Corporation Reports Third Quarter 2007 Financial Results" which states, in

7  pertinent part:

8        Immersion Corporation (NASDAQ:IMMR), a leading developer and licensor of
         touch feedback technology, today announced its third quarter 2007 financial results.
9        Revenues were $9.8 million for the quarter ended September 30, 2007 or 49%
         higher when compared to revenues of $6.6 million for the third quarter of 2006.
10
11       Net income for the third quarter was $493,000 compared to a net loss of $(3.2)
         million for the third quarter of 2006.  Diluted earnings per share were $0.02 for the
12       quarter compared to $(0.13) loss per share for the third quarter of 2006.

13       Revenues were $24.8 million for the nine months ended September 30, 2007
         compared to revenues of $19.2 million for the first nine months of 2006.  Net
14       income for the first nine months of 2007 was $123.1 million, or $3.93 diluted
         earnings per share, compared to a net loss of $(8.4) million, or $(0.34) loss per
15       share, for the first nine months of 2006.

16       As of September 30, 2007, Immersion had cash, cash equivalents, and short term
         investments totaling $137.2 million compared to $135.5 million as of June 30, 2007.
17
         "Immersion has now completed three consecutive profitable quarters with very
18       strong year to date revenue growth compared to the first nine months of 2006.
         Revenue from our Medical business grew 22%, Touch Interface Products 32%, and
19       Gaming 47%.  We also reached a significant level of third quarter revenue of
         $930,000 in our Mobility business," said Victor Viegas, Immersion CEO, president,
20       and chairman of the board.

21       "We recently completed a strategic plan for significantly growing revenue and
         shareholder value, targeting growth opportunities in three areas: medical simulators,
22       mobile devices, and tactile feedback for touchscreens," continued Viegas.  "The
         plan involves product and technology development, sales and marketing initiatives,
23       financial plans, and organizational changes.

24       "Over the past five years, the Immersion team and I have built and defended a
         strong intellectual property portfolio, invested in markets and technologies that have
25       become long term growth opportunities, and steered the company to profitability.
         As the leading company in haptics technology, Immersion is positioned for
26       substantial growth as markets increasingly recognize the value of haptics.  Now is
         the right time to bring in additional management strength in sales and marketing to
27       drive our growth initiatives while I continue to provide my expertise in licensing,
         intellectual property, and business negotiations.  Therefore, the Immersion Board of
28       Directors and I are announcing several organizational changes," concluded Viegas.

Effective October 31, 2007, Victor Viegas, currently CEO, president, and director of Immersion was elected chairman of the board, and Jack Saltich, who has served on the board since January 2002, was elected lead independent director in accordance with corporate governance best practices. Mr. Viegas continues as CEO and president while the Immersion Board of Directors conducts an open search for a new CEO.

In addition, the company will add a new board member to strengthen experience in the mobile communications industry. A search has begun for candidates with sales and marketing experience in the wireless operator and mobile phone market.

"These changes help position Immersion for its next stage of growth, one based on building strong businesses from its solid foundation of intellectual property, technology, and product solutions," said Jack Saltich, lead director. "As the company continues to benefit from Vic's leadership and financial background as chairman of the board, it will also benefit from a new CEO and a new board member who will each bring additional skills, strong sales and marketing background, and experience in one or more of our target markets."

In a separate press release today, Immersion announced that its board of directors authorized the repurchase of up to $50 million of the company's common stock as part of its strategic financial plan.

38.     On November 8, 2007, Defendants caused Immersion to file its Quarterly Report on Form 10 Q with the SEC for the quarterly period ended September 30, 2007. The Company's November 8, 2007 Form 10 Q was signed by defendants Viegas and Ambler, and reaffirmed the Company's financial results previously announced on November 1, 2007. The Company's November 8, 2007 Form 10 Q also contained Sarbanes Oxley certifications from defendants Viegas and Ambler in a form substantially similar to the May 2007 Form 10-Q.

## D.     Fourth Quarter 2007 Financial Results

39.     On February 28, 2008, Defendants caused the Company to issue a press release entitled "Immersion Corporation Reports Fourth Quarter 2007 Financial Results" which states, in pertinent part:

Immersion Corporation (NASDAQ:IMMR), a leading developer and licensor of touch feedback technology, today announced its fourth quarter 2007 financial results. Revenues were $9.9 million for the quarter ended December 31, 2007 or 15 percent higher when compared to revenues of $8.6 million for the fourth quarter of 2006.

Net income for the fourth quarter was $0.5 million compared to a net loss of $(2.0) million for the fourth quarter of 2006. Diluted earnings per share were $0.02 for the quarter compared to $(0.08) loss per share for the fourth quarter of 2006.

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

11

1
2
3

Revenues were $34.7 million for the year ended December 31, 2007 compared to revenues of $27.9 million for the year ended December 31, 2006, an increase of 25 percent. Net income for the year ended December 31, 2007 was $117.0 million, or $3.71 diluted earnings per share, compared to a net loss of $(10.4) million, or $(0.42) loss per share, for the year ended December 31, 2006.

4
5

As of December 31, 2007, Immersion had cash, cash equivalents, and short term investments totaling $138.1 million compared to $137.2 million as of September 30, 2007.

6
7
8
9

"In 2007, Immersion achieved revenue growth of 25 percent and profitability in each of the four quarters," said Victor Viegas, Immersion CEO, president, and chairman of the board. "We have substantial organic growth opportunities in our medical, mobility, and touch interface products businesses. We have a strong balance sheet that allows us to increase investment in new product development and in sales and marketing to drive a faster pace of customer adoption of our products and technologies worldwide."

10
11
12
13
14
15
16
17

***The Company has determined that a correction is needed to the previously issued financial reports for the three months ended March 31, 2007 and for the six and nine months ended June 30, 2007 and September 30, 2007, respectively. The Company has determined that in the March 31, 2007 quarter, it understated income tax expense by $6.6 million. The net correction was the result of overestimating state income tax expense, offset by an error in releasing valuation allowance to income tax expense related to stock option deductions for prior years. This correction has no effect on revenue, operating income, or cash balances. The impact of these corrections is to increase previously reported income tax expense by $6.6 million, reduce income tax liability by $0.7 million, increase deferred tax assets by $0.3 million, and increase stockholders' equity by a net $1.0 million.*** Please refer to the Form 8 K filed with the Securities and Exchange Commission today for details on the correction. The Company's consolidated financial statements as of and for the year ended December 31, 2007 reflect the impact of the correction described in the Form 8 K. (Emphasis added).

18
19
20
21
22

40.   On March 17, 2008, Defendants caused Immersion to file its Annual Report on Form 10 K with the SEC. The Company's Form 10 K was signed by defendant Ambler, and reaffirmed the Company's financial results previously announced on February 28, 2008. The Company's Form 10 K also contained Sarbanes Oxley certifications from defendants Viegas and Ambler in a form substantially similar to the May 2007 Form 10-Q.

23

**E.   First Quarter 2008 Financial Results**

24
25
26

41.   On May 1, 2008, Defendants caused the Company to issue a press release entitled "Immersion Corporation Reports First Quarter 2008 Financial Results" which states, in pertinent part:

27
28

Immersion Corporation (NASDAQ:IMMR), a leading developer and licensor of touch feedback technology, today announced its first quarter 2008 financial results.

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

12

Revenues were $8.2 million for the quarter ended March 31, 2008 or 27 percent higher when compared to revenues of $6.4 million for the first quarter of 2007.

Net loss for the first quarter was $(2.6) million compared to a net income of $115.8 million for the first quarter of 2007. Net income for the first quarter of 2007 included $134.9 million of litigation conclusions and patent license. Loss per share was $(0.08) for the quarter compared to $3.91 diluted earnings per share for the first quarter of 2007.

As of March 31, 2008, Immersion had cash, cash equivalents, and short term investments totaling $140.0 million compared to $138.1 million as of December 31, 2007.

"I believe haptics is at a tipping point, fast becoming an imperative for the ideal intuitive user interface," said Immersion president and CEO Clent Richardson. "I'm pleased and excited to be joining Immersion to take our products and technology to the next level of adoption and proliferation and, in so doing, deliver more value to our shareholders, customers, and end users. We are adding high quality, experienced sales, marketing, and support people to further our plans for international growth and to help our customers around the world take advantage of and quickly implement haptics in their new products."

42.     On May 9, 2008, Defendants caused Immersion to file its Quarterly Report on Form 10 Q with the SEC for the quarterly period ended March 31, 2008. The Company's May 9, 2008 Form 10 Q was signed by defendants Richardson and Ambler, and reaffirmed the Company's financial results previously announced on May 1, 2008. The Company's May 9, 2008 Form 10 Q also contained Sarbanes Oxley certifications from defendants Richardson and Ambler in a form substantially similar to the May 2007 Form 10-Q.

**F.     Second Quarter 2008 Financial Results**

43.     On July 31, 2008, Defendants caused the Company to issue a press release entitled "Immersion Corporation Reports Second Quarter 2008 Financial Results" which states, in pertinent part:

Immersion Corporation (NASDAQ:IMMR), the leader in developing and licensing touch feedback technology (http://www.immersion.com/corporate/), today announced its second quarter 2008 financial results. Revenues were $9.3 million for the quarter ended June 30, 2008, compared to revenues of $8.6 million for the second quarter of 2007, an increase of 8%.

Net loss for the second quarter was $(3.1) million, compared to net income of $176,000 for the second quarter of 2007. Loss per share was $(0.10) for the quarter, compared to $0.01 diluted earnings per share for the second quarter of 2007.

Revenues were $17.5 million for the six months ended June 30, 2008, compared to revenues of $15.0 million for the first six months of 2007, an increase of 16%. Net loss for the first six months of 2008 was $(5.7) million, or $(0.19) loss per share, compared to net income of $116.0 million, or $3.81 diluted earnings per share, for

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

the first six months of 2007.  Net income for the first six months of 2007 included $134.9 million of litigation conclusions and patent license.

As of June 30, 2008, Immersion had cash, cash equivalents, and short term investments totaling $129.4 million, compared to $140.0 million as of March 31, 2008.  During the quarter, the Company bought back some of its own shares under the previously approved share repurchase program at a cost of $6.1 million.

In July, Immersion granted a worldwide license agreement for VibeTonz(R) technology to KTF Technologies Inc., a handset manufacturer in Korea.

"An important goal of ours for long term growth is increasing international sales and balancing the mix of domestic and international revenue," said Immersion president and CEO Clent Richardson.  "We are aggressively expanding our global reach to support our focused growth opportunities in medical, mobility, and touchscreen tactile feedback.  Our efforts include staffing with the very best people and locating them where the opportunities exist around the world.  We are already seeing positive and measurable results from our investments.  Second quarter international revenues reached $4.5 million, almost 50% of total revenue and an increase of 25% compared to the year ago quarter."

44.    On August 8, 2008, Defendants caused Immersion to file its Quarterly Report on Form 10 Q with the SEC for the quarterly period ended June 30, 2008.  The Company's August 8, 2008 Form 10 Q was signed by defendants Richardson and Ambler, and reaffirmed the Company's financial results previously announced on July 31, 2008.  The Company's August 8, 2008 Form 10 Q also contained Sarbanes Oxley certifications from defendants Richardson and Ambler in a form substantially similar to the May 2007 Form 10-Q.

G.    **Third Quarter 2008 Financial Results**

45.    On October 30, 2008, Defendants caused the Company to issue a press release entitled "Immersion Corporation Reports Record Revenue for the Third Quarter of 2008" which states, in pertinent part:

Immersion Corporation (NASDAQ:IMMR), the leader in developing and licensing touch feedback technology (http://www.immersion.com/corporate/), today reported financial results for the third quarter ended September 30, 2008.

Revenues for the third quarter of fiscal 2008 were $10.1 million, an increase of approximately 3% over revenues of $9.8 million for the third quarter of 2007.  Net loss for the third quarter, which included a one time charge of $20.75 million related to the settlement of Immersion's litigation with Microsoft, was $(32.3) million, or $(1.10) per share.  Excluding the one time charge, and tax effects of $7.3 million, net loss for the third quarter was $(4.3) million, or $(0.15) per share.  This compares to net income of $493,000, or $0.02 per diluted share, for the third quarter of 2007.

"Immersion's revenue of $10.1 million was not only the highest revenue total in our history, but also the first time that quarterly revenue has exceeded the $10 million

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

14

mark," said Immersion president and CEO Clent Richardson. "Results for the touch side of our business were highlighted by strong adoption of our solutions in high volume mobile phones, while international sales for our medical line of business were robust. We settled two important legal disputes during the quarter, allowing management to focus its time and energy on execution. In short, while we are not satisfied with our growth rate or bottom line results, Immersion demonstrated solid execution and performance amidst the turbulent macroeconomic environment."

As of September 30, 2008, Immersion had cash, cash equivalents, and short term investments totaling $119.1 million, compared to $129.4 million as of June 30, 2008. During the quarter, Immersion bought back $7.2 million of its own stock.

"While we are mindful of the current economic climate, Immersion's extremely strong balance sheet and the magnitude of the global opportunities to leverage the world's best IP portfolio of haptics technology provides us with confidence in our growth initiatives," concluded Richardson.

Corporate Highlights

Immersion recently:

   -- Expanded international presence for its medical business by increasing operations across Asia, Europe, and South America and announced a distribution agreement for Immersion Medical surgical simulators with Tellyes Scientific, a leading supplier of advanced medical education products in China.

   -- Focused on building the executive team with the addition of Craig Vachon as vice president and general manager of its Mobility group and the promotion of Dr. Christophe Ramstein to chief technology officer.

   -- Announced that more than 30 million mobile phones featuring Immersion's renowned haptic technology have been sold worldwide including the Samsung Haptic 2, the first mobile phone that lets users design their own haptic effects to personalize touch feedback.

   -- Signed worldwide license agreements for Immersion's TouchSense® technology with Samsung for digital audio devices and with dreamGear for computer, console, and handheld gaming peripherals.

   -- Was invited to join Samsung's Mobile Innovator program as a founding core member to bring together key technologies and the developer community.

   46.    On November 7, 2008, Defendants caused Immersion to file its Quarterly Report on Form 10 Q with the SEC for the quarterly period ended September 30, 2008. The Company's November 7, 2008 Form 10 Q was signed by defendants Richardson and Ambler, and reaffirmed the Company's financial results previously announced on October 30, 2008. The Company's August 8, 2008 Form 10 Q also contained Sarbanes Oxley certifications from defendants Richardson and Ambler in a form substantially similar to the May 2007 Form 10-Q.

**H.    Fourth Quarter and Fiscal Year 2008 Financial Results**

---

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

47.     On March 2, 2009, Defendants caused the Company to issue a press release entitled

"Immersion Corporation Reports Fourth Quarter and Fiscal Year 2008 Results" which states, in

pertinent part:

> Immersion Corporation (NASDAQ:IMMR), the leader in developing and licensing touch feedback technology (http://www.immersion.com/corporate/), today reported financial results for the fourth quarter and year ended December 31, 2008.
>
> Revenues for the fourth quarter of fiscal 2008 were $9.0 million, a decrease of 9% compared to revenues of $9.9 million for the fourth quarter of 2007 and a decrease of 11% compared to $10.1 million in the third quarter of 2008. Excluding $1.1 million in one time deferred revenues for the third quarter of 2008, revenues for the fourth quarter were flat sequentially. Net loss for the fourth quarter, which included one time charges of $2.6 million related to the divestiture of the 3D line of business, was $(9.7) million, or $(0.35) per share. Excluding the one time charges, net loss for the fourth quarter was $(7.1) million, or $(0.26) per share. This compares to net income of $511,000, or $0.02 per diluted share, for the fourth quarter of 2007 and to a net loss in the third quarter of 2008 of $(32.3) million, or $(1.10) per share, which included a one time charge of $20.75 million related to the settlement of Immersion's litigation with Microsoft. Of the $2.6 million in costs related to the divestiture of the 3D line of business, $2.1 million was included within Cost of Products Sales, with the remainder included within Restructuring Costs.
>
> Revenues for fiscal 2008 were $36.5 million, an increase of 5% over revenues of $34.7 million for fiscal 2007. Net loss for fiscal 2008, which included one time charges of $2.6 million related to the divestiture of the 3D line of business, and a $20.75 million settlement of Immersion's lawsuit with Microsoft, was $(47.7) million, or $(1.61) per share. Excluding the one time charges and settlement, net loss for fiscal 2008 was $(24.4) million, or $(0.82) per share. This compares with net income of $117 million, or $3.71 per diluted share, in fiscal 2007, which included $134.9 million related to Litigation Settlements, Conclusions and Patent License Income.
>
> "Despite a backdrop of severe economic turmoil, Immersion posted growth in 2008," said Immersion president and CEO Clent Richardson. "We delivered this growth while undertaking decisive and transformative actions across our business as we have rebuilt our leadership team, simplified and streamlined our lines of business, forged important new customer relationships and recently re launched our brand. The interest around products leveraging touch continues to gain momentum, creating a growing appreciation for Immersion's technology. We are now focused on execution and capitalizing on opportunities created by this trend in 2009, backed by a balanced and diversified business model, with a strong balance sheet from which to fund our growth objectives."
>
> Immersion recently announced that it has restructured its operations into two primary lines of business  Medical and Touch  in an effort to improve focus, drive future growth and leverage synergies inherent to its business model. As part of this process, the company today announced that it is relocating its Medical line of business from Gaithersburg, Maryland to its corporate headquarters in San Jose, California. This move is designed to measurably improve the Medical line of business from an execution, operations and management perspective and is expected to result in meaningful cost savings beginning in mid 2009.

As of December 31, 2008, Immersion had cash, cash equivalents, and short term investments totaling $85.7 million, compared to $98.3 million as of October 1, 2008, which reflects the company's litigation settlement with Microsoft.  During the quarter, Immersion bought back $5.0 million of its own stock, bringing the total for fiscal 2008 to $18.4 million.

Corporate Highlights

Immersion recently:

-       Benefitted from over 12.5 million handsets shipped by its mobile partners in the fourth quarter of 2008, up from 10 million in the third quarter of 2008.  Well over 40 million Immersion enabled handsets have now been delivered to the market.

-       Appointed Craig Vachon to senior vice president and general manager of its Touch line of business and Amie Peters as vice president of Legal.

-       Installed new leadership within the Medical line of business with the promotion of Daniel Chavez to senior vice president and general manager and the appointment of Steve Anderson to Vice President of Product Development.

-       Signed a worldwide license agreement with Pantech Co., Ltd. to use its haptics technology in several of Pantech's premier mobile phone handsets.

-       Entered into an agreement with Leadis Technology, Inc., an analog and mixed signal semiconductor developer of power management and touch ICs for mobile consumer electronics devices, to enable rapid implementation of high quality haptic feedback in capacitive touch enabled devices.

-       Announced that it will power the advanced haptic user experience in Samsung's new subscription enabled digital media player, the P3, the first digital media player in the world to include touch feedback.

-       Announced that its industry leading haptic technology is now available for implementation in phones powered by Android, the Open Handset Alliance's open source platform for mobile devices.

-       Partnered with Visteon Corporation, a global automotive supplier, to apply its TouchSense(R) technology on electronic controls in vehicles and announced the first ever automotive grade actuator that enables fast integration of advanced haptics into touchscreens and touch surfaces for the global automotive industry.

-       Announced plans to divest its 3D line of business to focus its attention on the Medical and Touch lines of business.

48.     On March 9, 2008, Defendants caused Immersion to file its Annual Report on Form 10 K with the SEC.  The Company's Form 10 K was signed by defendant Ambler, and reaffirmed the Company's financial results previously announced on March 2, 2009.  The Company's Form 10 K also contained Sarbanes Oxley certifications from defendants Richardson and Ambler in a form substantially similar to the May 2007 Form 10-Q.

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

17

## I.   **First Quarter 2009 Financial Results**

49.     On May 2, 2009, Defendants caused the Company to issue a press release entitled

"Immersion Corporation Reports First Quarter 2008 Results" which states, in pertinent part:

> Immersion Corporation (NASDAQ:IMMR), the leader in developing and licensing touch feedback technology (http://www.immersion.com/corporate/), today reported financial results for the first quarter ended March 31, 2009.
>
> Revenues from Continuing Operations for the first quarter of 2009 were $7.0 million, an increase of 1% compared to revenues from Continuing Operations of $6.9 million for the first quarter of 2008 and a decrease of 8% compared to revenues from Continuing Operations of $7.6 million for the fourth quarter of 2008. Total revenue generated during the first quarter of 2009 by the Company was $7.5 million, $531,000 of which was included within Gain from Discontinued Operations.
>
> Immersion commenced the divestiture of its 3D line of business during the first quarter of 2009. Income and expenses directly attributable to the 3D business are presented as "Discontinued Operations" in the Company's statement of operations.
>
> Net loss for the first quarter of 2009 was $(7.5) million, or $(0.27) per share, compared to net loss for the first quarter of 2008 of $(2.6) million, or $(0.08) per share and net loss of $(9.7) million, or $(0.35) per share, for the fourth quarter of 2008, which included one time charges of $2.6 million related to the divesture of the 3D line of business.
>
> "Demand for Immersion's proprietary TouchSense solutions was strong as we posted sequential and annual growth for this line of business during the first quarter. Touch screens in mobile phones is fueling demand for haptics in that market segment. We estimate that in 2008 our TouchSense technology shipped in 15% of touch screen phones worldwide. Based on our current design wins with the top three handset manufacturers globally, we expect that number to grow to approximately 25% of 2009 touch screen phone shipments. Separately, we have begun to generate royalty license revenue from agreements with semiconductor companies and believe that this is the beginning of an important new revenue stream for Immersion," said Immersion president and CEO Clent Richardson.
>
> "Domestic Medical sales were lower than expected primarily due to sluggishness in the rate of capital purchases from hospitals and other facilities caused by the overall economy, as well as seasonal fluctuations. The relocation of our Medical line of business to our headquarters, combined with cost cutting initiatives, are expected to improve the operational and financial performance of that business. Given the reduced trajectory of our revenue growth rate, we have taken aggressive and prudent actions to decrease expenses across the company to achieve cash flow breakeven and turn the corner on sustained profitability as quickly as possible. We will begin to experience the benefits of these actions in the second quarter, though the major payoff will be realized starting in the second half of 2009 and into next year. We are sizing the company appropriately to align with current revenue forecasts, while improving operational efficiency to capitalize on an unmistakable opportunity to shape the future of the user experience in digital devices," concluded Richardson.

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

18

As of March 31, 2009, Immersion had cash, cash equivalents, and short term investments totaling $80.9 million, compared to $85.7 million as of December 31, 2008.

Corporate Highlights

Immersion recently:

-   Announced its first licensee in the high growth robotic surgery market with MAKO Surgical, an innovator in robotically assisted orthopedic surgery.

-   Announced an exclusive new distribution agreement for its medical simulation products with Gadelius K.K., one of Japan's prominent distributors of medical devices and industrial equipment.

-   Announced the first ever haptic medical simulation, Endobronchial Ultrasound with Transbronchial Needle Aspiration (EBUS TBNA), which provides realistic multi modal virtual reality training for the procedure that diagnoses and stages lung cancer.

-   Announced the sale of its CyberGlove(R) business to a private equity firm. The sale is part of the divestiture of the Company's 3D line of business to focus its attention on the Medical and Touch lines of business.

50.     On May 8, 2009, Defendants caused Immersion to file its Quarterly Report on Form 10 Q with the SEC for the quarterly period ended March 31, 2009. The Company's May 8, 2007 Form 10 Q was signed by defendants Richardson and Ambler, and reaffirmed the Company's financial results previously announced on May 4, 2009. The Company's May 8, 2009 Form 10 Q also contained Sarbanes Oxley certifications from defendants Richardson and Ambler in a form substantially similar to the May 2007 Form 10-Q.

## THE TRUTH BEGINS TO EMERGE

51.     On July 1, 2009, Defendants caused the Company to issue a press release entitled "Immersion Corporation Announces Internal Investigation," which states, in pertinent part:

Immersion Corporation (NASDAQ:IMMR) announced that *the Audit Committee of the Board of Directors of Immersion Corporation ("Immersion") is conducting an internal investigation into certain previous revenue transactions in its Medical line of business.* The investigation is being conducted with the assistance of outside counsel. The Audit Committee has not yet determined the impact, if any, to Immersion's historical financial statements. As a result of this investigation, Immersion may discover information that could raise issues with respect to its previously reported financial information, which could be material. Immersion will not be able to evaluate the full impact of the aforementioned matters until the Audit Committee completes its review and further analysis is completed.

Although Immersion currently intends to be in a position to file its quarterly report on Form 10 Q for the second quarter of fiscal 2009 on time and is diligently

pursuing this investigation, it is possible that as a result of the investigation, Immersion would be unable to file its quarterly report and announce financial results in a timely manner. (Emphasis added).

52. On August 5, 2009, the Company issued a Current Report on Form 10-K announcing that, effective July 31, 2009, that defendant Ambler – the Company's Principal Financial Officer, ("CFO"), and Vice President, Finance, and who had signed and certified each quarterly and annual report during the Relevant Period – resigned.

53. On August 10, 2009, defendants caused the Company to issue a Current Report with the SEC on Form 8-K announcing that the financial statements in the Company's last annual report, and quarterly reports since March 31, 2008 contained errors. The August 10, 2009 Form 10-K states, in pertinent part:

Item 4.02. Non Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.

On August 10, 2009, *the Audit Committee of the Board of Directors of Immersion Corporation* ("Immersion"), after consultation with management *concluded that its previously issued consolidated financial statements as of and for the year ended December 31, 2008 and auditor's report thereon, and previously issued unaudited financial statements as of and for the periods ended March 31, 2009, December 31, 2008, September 30, 2008, June 30, 2008 and March 31, 2008, should no longer be relied upon because of one or more errors in such financial statements*.

This determination was based on the ongoing previously announced investigation, undertaken by the Audit Committee of the Board of Directors, of certain revenue transactions in Immersion's Medical line of business for which accounting errors have been identified. Immersion is currently neither in a position to fully quantify the restatement adjustments nor in a position to determine the magnitude of revenue and accounts receivable overstatements during the above periods; however, the correction of these errors would affect the amount and timing of revenue recognized for the respective periods. The resulting changes will require restatement of Immersion's financial statements for such periods. While Immersion will not be able to evaluate the full impact of the aforementioned matters until the investigation and analysis are completed, Immersion does not currently anticipate any changes to its cash flows from operations for these periods or the results of its Touch line or other historic lines of business. Similarly, related press releases, annual report and stockholder communications describing Immersion's financial statements for these periods should no longer be relied upon.

Immersion has also discussed this matter with its independent registered public account Deloitte & Touche LLP.

Although Immersion cannot at this time estimate when it will be in a position to file its restated financial statements and its Second Quarter 2009 Form 10 Q, it is diligently pursuing these matters and intends to make the filing as soon as reasonably practicable after the conclusion of the investigation and analysis.

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

20

As a result of these matters, Immersion is also in the process of reassessing the effectiveness of its internal control over financial reporting. (Emphasis added).

54.    Also on August 10, 2009, the Company filed a Form NT 10-Q with the SEC, indicating that it "is unable to timely file its Quarterly Report on Form 10 Q for the quarter ended June 30, 2009 by the prescribed due date due to the fact that the previously announced Audit Committee internal investigation has not yet been completed, which has delayed the completion of the financial statements for the second quarter of fiscal year 2009 and related disclosures."

55.    On August 12, 2009, the Company received a letter from the Nasdaq Stock Market ("Nasdaq") stating that Immersion violated Nasdaq Marketplace Rule 5250(c)(1) as a result of its delayed filing of its Quarterly Report on Form 10 Q for the period ended June 30, 2009. Under Nasdaq rules, Immersion had until October 13, 2009, to submit to Nasdaq a plan to regain compliance with the Nasdaq listing rules. On October 15, 2009, Immersion received a letter from NASDAQ notifying Immersion that it has granted Immersion's request to remain listed on NASDAQ, subject to Immersion filing its Quarterly Report on Form 10 Q for the quarter ended June 30, 2009 on or before February 8, 2010.

56.    On October 21, 2009, Defendants caused the Company to issue a press release entitled "Immersion Announces Management Change," which states, in pertinent part:

> Immersion Corporation (NASDAQ:IMMR) announced that Clent Richardson has resigned, effective immediately, as Chief Executive Officer and a member of the Immersion Board of Directors to pursue other interests.
>
> . . . .
>
> The Board appointed Victor Viegas, a member of Immersion's Board of Directors and former Chief Executive Officer of Immersion, to serve as interim Chief Executive Officer.

57.    Defendants' statements set forth above were materially false and misleading because (i) in fact, the Company recognized revenue in violation of its own revenue cut off procedures; (ii) the Company's financial results were misstated during the Relevant Period; and (iii) Defendants misrepresented the nature and extent of the Company's purported internal review.

58.    Indeed, the Audit Committee has concluded that Immersion's previously issued consolidated financial statements as of and for the year ended December 31, 2008 and auditor's

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

21

report thereon, and previously issued unaudited financial statements as of and for the periods ended (a) March 31, 2009, (b) December 31, 2008, (c) September 30, 2008, (d) June 30, 2008, and (e) March 31, 2008, should no longer be relied upon because of one or more errors in such financial statements.

## NO SAFE HARBOR

59.     The statutory safe harbor provided for forward looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The specific statements pleaded herein were not identified as "forward looking statements" when made. Nor was it stated with respect to any of the statements forming the basis of this complaint that actual results "could differ materially from those projected." To the extent there were any forward looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward looking statements pleaded herein, defendants are liable for those false forward looking statements because at the time each of those forward looking statements were made the particular speaker knew that the particular forward looking statement was false, and/or the forward looking statement was authorized and/or approved by an executive officer of Immersion who knew that those statements were false when made.

## SCIENTER ALLEGATIONS

60.     As alleged herein, defendants Richardson and Ambler acted with scienter in that defendants knew or recklessly failed to know that the public documents and statements, issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth elsewhere herein in detail, defendants Richardson and Ambler, by virtue of their receipt of information reflecting the true facts regarding Immersion and its business practices, their control over and/or receipt of Immersion's allegedly materially misleading misstatements and/or

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

their associations with the Company which made them privy to confidential proprietary information concerning Immersion were active and culpable participants in the fraudulent scheme alleged herein.

61.     Defendants Richardson and Ambler knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. This case does not involve allegations of false forward looking statements or projections but instead involves false statements concerning the Company's business, finances and operations. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including defendants Richardson and Ambler.

## LOSS CAUSATION ALLEGATIONS

62.     Defendants Richardson and Ambler, by virtue of their positions at Immersion and their certification of Immersion's quarterly and annual filings with the SEC, caused Immersion to issue fraudulent statements and omissions that artificially inflated Immersion's common stock price during the Relevant Period, until the truth was revealed.

## VIOLATION OF GAAP RULES IN ITS FINANCIAL STATEMENTS FILED WITH THE SEC

63.     Defendants Richardson and Ambler caused or allowed Immersion to overstate earnings and to issue false and misleading statements during the Relevant Period. Immersion's financial statements during the Relevant Period were not a fair presentation of the Company's results and were presented in violation of GAAP and SEC rules.

64.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. SEC Regulation S X (17 C.F.R. §210.4 01 (a)(l)) states that financial statements filed with the SEC that are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnote or other disclosure. Regulation S X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need

not include disclosure that would be duplicative of disclosures accompanying annual financial statements, 17 C.F.R. §210.10 01(a).

65.     Due to these accounting improprieties, defendants Richardson and Ambler caused the Company to present its financial results and statements in a manner that violated GAAP, as follows:

1.     The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements was violated (APB No. 28, 10);

2.     The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions was violated (FASB Statement of Concepts No. 1, 34);

3.     The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources was violated (FASB Statement of Concepts No. 1, 40);

4.     The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it was violated. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, 50);

5.     The principle that financial reporting should provide information about an enterprise's financial performance during a period was violated. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, 42);

6.    The principle that financial reporting should be reliable in that it represents what it purports to represent was violated. That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶ 58 95);

7.    The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASB Statement of Concepts No. 2, ¶ 79); and

8.    The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶ 95, 97).

66.    Further, the undisclosed adverse information concealed by defendants Richardson and Ambler during the Relevant Period is the type of information which, because of SEC regulations, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

67.    Plaintiff brings this action derivatively in the right and for the benefit of Immersion to redress the breaches of fiduciary duty and other violations of law by Defendants.

68.    Plaintiff will adequately and fairly represent the interests of Immersion and its shareholders in enforcing and prosecuting its rights.

69.    The Board currently consists of the following six (6) individuals: defendants Viegas, Saltich, Hodgman, McGheest, Van Naarden, and Liggett. Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act, for the following reasons:

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

25

1.     During the Relevant Period, defendants Saltich, Hodgman, and Liggett served as members of the Audit Committee. Pursuant to the Audit Committee Charter, members of the Audit Committee are charged with reviewing quarterly and annual financial statements prior to their filing. Furthermore, members of the Audit Committee were responsible for the above discussed purported internal investigation. In connection with the internal investigation, the Audit Committee permitted obviously false and misleading statements to be made concerning it. Thus, defendants Saltich, Hodgman, and Liggettbreached their fiduciary duties of due care, loyalty, and good faith, because they allowed the Company to disseminate the false and misleading information detailed above (particularly with regard to the internal investigation they themselves undertook and were responsible for). Therefore, defendants Saltich, Hodgman, and Liggett face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile;

2.     The principal professional occupation of defendant Viegas is his employment with Immersion as its CEO, pursuant to which he received and continues to receive substantial monetary compensations and other benefits. Thus, defendant Viegas lacks independence, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

## COUNT I
### BREACH OF FIDUCIARY DUTIES FOR
### DISSEMINATING FALSE AND MISLEADING STATEMENTS
#### (Against All Defendants)

70.     Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

71.     As alleged in detail herein, each of the Defendants (and particularly the Audit Committee Defendants) had a duty, pursuant to Immersion's Audit Committee Charter, to ensure that Immersion disseminated accurate, truthful and complete information to its shareholders.

72.     Defendants violated the fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to Immersion shareholders materially misleading and

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

26

1   inaccurate information through, inter alia, SEC filings, press releases, and other public statements

2   and disclosures as detailed herein.  These actions could not have been a good faith exercise of

3   prudent business judgment.

4       73.     As a direct and proximate result of Defendants' foregoing breaches of fiduciary

5   duties, the Company has suffered significant damages, as alleged herein.

6
7                           **COUNT II**
                **BREACH OF FIDUCIARY DUTIES FOR**
             **FAILING TO MAINTAIN INTERNAL CONTROLS**
8                      **(Against All Defendants)**

9       74.     Plaintiffs incorporate by reference and reallege each and every allegation set forth

10  above, as though fully set forth herein.

11      75.     As alleged herein, each of the Defendants had a fiduciary duty to, among other

12  things, exercise good faith to ensure that the Company's financial statements were prepared in

13  accordance with GAAP, and, when put on notice of problems with the Company's business

14  practices and operations, exercise good faith in taking appropriate action to correct the misconduct

15  and prevent its recurrence.

16      76.     Defendants willfully ignored the obvious and pervasive problems with Immersion's

17  accounting and internal control practices and procedures and failed to make a good faith effort to

18  correct the problems or prevent their recurrence.

19      77.     As a direct and proximate result of the Defendants' foregoing breaches of fiduciary

20  duties, the Company has sustained damages.

21                          **COUNT III**
         **COMMON LAW RESTITUTION / UNJUST ENRICHMENT**
22                     **(Against All Defendants)**

23      78.     Plaintiffs incorporate by reference and reallege each and every allegation set forth

24  above, as though fully set forth herein.

25      79.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the

26  expense of and to the detriment of Immersion.

27
28

---

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS
MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL
SECURITIES LAWS - 59668

27

80.    Plaintiff, as a shareholder and representative of Immersion, seeks restitution from these Defendants, and each of them, and seek an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

**COUNT IV**
**ABUSE OF CONTROL**
**(Against All Defendants)**

81.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

82.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

83.    Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Immersion, for which they are legally responsible.  In particular, Defendants abused their positions of authority by causing or allowing Immersion to misrepresent material facts regarding its financial position.

84.    As a direct and proximate result of Defendants' abuse of control, Immersion has sustained significant damages.

85.    As a result of the misconduct alleged herein, Defendants are liable to the Company.

86.    Plaintiff, on behalf of Immersion, has no adequate remedy at law.

**COUNT V**
**GROSS MISMANAGEMENT**
**(Against All Defendants)**

87.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

88.    Defendants had a duty to Immersion and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Immersion.

89.    Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

28

businesses of Immersion in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Immersion's affairs and in the use and preservation of Immersion's assets.

90.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Immersion to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Immersion, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Immersion.

91.     By reason of the foregoing, Immersion has been damaged.

## COUNT VI
## VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT
## AND RULE 10B 5 PROMULGATED THEREUNDER
### (Against Defendants Richardson and Ambler)

92.     Plaintiff repeats and realleges each and every allegation contained above.

93.     Defendants Richardson and Ambler: (a) knew or recklessly disregarded material adverse non public information about Immersion's financial results and then existing business conditions, which was not disclosed; (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports and other public representations of and about Immersion; and (c) signed and certified, pursuant to Sarbanes-Oxley, the quarterly and annual reports of Immersion.

94.     During the Relevant Period, defendants Richardson and Ambler, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

95.     Defendants Richardson and Ambler violated § 10(b) of the Exchange Act and Rule 10b 5 promulgated thereunder in that they (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL SECURITIES LAWS - 59668

make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of Immersion common stock during the Relevant Period.

96.     The Company has suffered damage in that, in reliance on the integrity of the market, they paid artificially inflated prices for Immersion common stock.  Plaintiff and the Class would not have purchased Immersion common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' false and misleading statements.

**COUNT VII**
**VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT**
**(Against Defendants Richardson and Ambler)**

97.     Plaintiff repeats and realleges each and every allegation contained above.

98.     Defendants Richardson and Ambler acted as controlling persons of Immersion within the meaning of Section 20(a) of the Exchange Act.  By reason of their senior executive and/or board positions they had the power and authority to cause Immersion to engage in the wrongful conduct complained of herein.

99.     By reason of such wrongful conduct, defendants Richardson and Ambler are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these defendants' wrongful conduct, the Company has suffered damages during the Relevant Period.

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Defendants' breaches of fiduciary duties;

B.     Ordering appropriate equitable relief to remedy Defendants' misconduct;

C.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

D.     Granting such other and further relief as the Court deems just and proper.

1

## **JURY DEMAND**

2    Plaintiff demands a trial by jury.

3    DATED:  October 29, 2009

4                                    BRAMSON PLUTZIK MAHLER &
                                     BIRKHAEUSER
5

6
                                     By:  _____ /s/*Alan R. Plutzik*_____
7                                              Alan R. Plutzik

8                                    Alan R. Plutzik (State Bar No. 077785)
                                     aplutzik@bramsonplutzik.com
9                                    2125 Oak Grove Road, Suite 120
                                     Walnut Creek, CA  94598
10                                   Telephone:  (925) 945-0200
                                     Facsimile:   (925) 945-8792
11
                                     HARWOOD FEFFER LLP
12                                   Robert I. Harwood
                                     James G. Flynn
13                                   488 Madison Avenue, 8th Floor
                                     New York, NY  10022
14                                   Telephone:  (212) 935-7400
                                     Facsimile:   (212) 753-3630
15
                                     Attorneys for Plaintiff
16

17

18

19

20

21

22

23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS
MISMANAGEMENT AND COMMON LAW RESTITUTION / UNJUST ENRICHMENT AND VIOLATION OF FEDERAL
SECURITIES LAWS - 59668

## VERIFICATION

I, Nancy Mello, hereby declare, under penalty of perjury, as follows:

I am the Plaintiff in the above-captioned action. I have read the foregoing Complaint and authorized its filing. Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

DATED: *Oct 22, 2009*     *Nancy Mello*
                          Nancy Mello